UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

FILED
SEP 25 2024
U. S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 4:24CR502 RWS/RHH |
| ) | |
| CYMONE MCCLELLAN, ) | |
| ) | |
| Defendant. ) | |

## INDICTMENT

The Grand Jury charges that, at all times material to this Indictment, unless otherwise specified below:

### INTRODUCTION

1. During her scheme to defraud, Defendant Cymone McClellan defrauded the State of Missouri out of more than two million dollars that she agreed to spend on feeding low-income children, but that she instead spent on purchasing houses, luxury vehicles, and other personal items.

2. Defendant McClellan executed her scheme to defraud through her ownership and operation of a non-profit organization called Sister of Lavender Rose ("S.O.L.R."), which was located in the Eastern District of Missouri.

**S.O.L.R.'s Participation in Missouri's Food and Nutrition Programs for Children**

3. The State of Missouri, through its Department of Health and Senior Services ("Missouri DHSS"), administered food and nutrition programs designed to provide nutritious meals to low-income Missouri children. To fulfill the mission of feeding low-income Missouri

1

children, Missouri DHSS administered two programs: **(1)** the At-Risk, Afterschool Child Food Program, and **(2)** the Summer Food Service Program (collectively "Missouri's Food and Nutrition Programs for Children"). Both programs are funded by the United States Department of Agriculture. Missouri's Food and Nutrition Programs for Children provided funds for meals served to low-income, school-age students after school and during the summer, when school was not in session. The meals were served by schools and community-based, nonprofit organizations at hundreds of locations throughout Missouri.

4. Through Missouri's Food and Nutrition Programs for Children, Missouri DHSS paid reimbursements to nonprofits that provided qualifying meals to low-income children in Missouri. To qualify for those state meal reimbursements, nonprofits—like S.O.L.R.—had to truthfully represent in their reimbursement claims that qualifying meals were provided to low-income Missouri children. For a meal to be reimbursable under both programs, the meal had to include several specific items. In order to be reimbursable, every meal served by S.O.L.R. had to include an eight-ounce serving of fluid, white milk.

5. In addition, nonprofits, including S.O.L.R., had to detail their procedures for collecting meal recipients' information and submitting reimbursement claims to ensure that the nonprofits submitted accurate and truthful meal reimbursement claims. To fulfill this requirement and obtain state meal reimbursement dollars, Defendant McClellan represented that she would utilize and maintain attendance sign-in sheets for S.O.L.R.'s food distribution sites.

6. As another requirement to receive reimbursements from Missouri's Food and Nutrition Programs for Children, nonprofits (including S.O.L.R.) had to agree to use state meal reimbursement funds only in connection with the nonprofit's provision of meals to low-income children. To obtain state meal reimbursement dollars, Defendant McClellan, on behalf of S.O.L.R.,

2

agreed that all "reimbursement funds ... [would be] used solely for the conduct of the food service operation, or to improve the food service operation, principally for the benefit of enrolled [children]." To ensure that reimbursement funds would be used appropriately, nonprofits (including S.O.L.R.) had to submit an annual administrative budget demonstrating that the nonprofit would spend no more than 15% of the reimbursement dollars it received on non-food expenses.

7. For a nonprofit (including S.O.L.R.) to continue receiving state meal reimbursement dollars, the nonprofit also had to submit annual management plans. In each required annual management plan, the nonprofit had to answer several questions designed to ensure that state meal reimbursement dollars were spent only in connection with the provision of meals to low-income children. For example, nonprofits (including S.O.L.R.) had to answer whether the organization "purchase[s] supplies, equipment, furniture, or other items with an aggregate purchase cost over $5000 in a one-year period?" In addition, nonprofits (including S.O.L.R.) had to detail for Missouri DHSS all of the equipment that was purchased with more than $5,000 in meal reimbursement funds every year. To continue receiving state meal reimbursement dollars, Defendant McClellan repeatedly represented to the State of Missouri that S.O.L.R. "does not purchase items over $5000 [.]"

8. In the annual management plan, nonprofits (including S.O.L.R.) also had to answer the following question: "How will you ensure that all operational and administrative costs incurred are allowable and accurately reflect the operation of the program? (All costs must be included in your budget.)" To continue receiving state meal reimbursement dollars, Defendant McClellan repeatedly answered this question by representing to the State of Missouri that "[a]ll checks are signed by the Director or Finance."

3

9. As another requirement to participate in Missouri's Food and Nutrition Programs for Children, nonprofits had to provide Missouri DHSS with the addresses where the nonprofit's food is prepared. For S.O.L.R., one of the food preparation addresses listed by Defendant McClellan belonged to an adults-only nightclub called Elmo's Love Lounge.

**COUNTS ONE – FOUR**
**(Wire Fraud: 18 U.S.C. § 1343)**

10. Each of the above allegations is hereby incorporated by reference as if fully set forth herein.

I.  **Defendant McClellan's Scheme to Defraud**

11. Beginning by at least on or about September 6, 2018, and continuing through at least on or about September 25, 2024, in the Eastern District of Missouri, and elsewhere, the defendant, **CYMONE MCCLELLAN**, with the intent to defraud, devised and intended to devise a scheme and artifice to defraud Missouri DHSS and to obtain money and property from Missouri DHSS by means of material false and fraudulent pretenses, representations, and promises, as described further herein. Defendant McClellan undertook the actions detailed below as part of her scheme and artifice to defraud.

    A.    **Defendant McClellan Defrauded the State of Missouri Out of More Than Two Million Dollars By Submitting Meal Reimbursement Claims for Meals That Were Never Served.**

12. Between in or about January 2019 and in or about June 2022, Defendant McClellan—on behalf of S.O.L.R. and within the Eastern District of Missouri—submitted and caused to be submitted false and fraudulent meal reimbursement claims to Missouri DHSS. Defendant McClellan submitted these false and fraudulent meal reimbursement claims so that she could take millions of dollars from Missouri's Food and Nutrition Programs for Children that she was not entitled to receive.

4

13.     In furtherance of her fraud scheme, Defendant McClellan submitted and caused to be submitted fraudulent meal reimbursement claims to Missouri DHSS for thousands of meals that S.O.L.R. never served. In all, Defendant McClellan falsely represented that she served a total of 860,876 reimbursable meals to low-income Missouri children, when—in truth and fact—she only purchased enough food and milk to serve fewer than a quarter of those meals. Based on Defendant McClellan's material misrepresentations, Missouri DHSS paid her at least $2 million dollars that Defendant McClellan was not entitled to receive.

14.     To conceal her fraud, Defendant McClellan provided and caused to be provided to Missouri DHSS fraudulent attendance sign-in sheets, which falsely represented that S.O.L.R. took the attendance of meal recipients at certain food distribution locations. In truth and fact—and despite repeated representations to the contrary- Defendant McClellan did not utilize attendance sign-in sheets at a number of her food distribution locations.

B.     **Defendant McClellan Made Material Misrepresentations in S.O.L.R.'s Annual Management Plans About How She Spent State Reimbursement Dollars, Which She Agreed to Only Spend on Feeding Low-Income Children.**

15.     Defendant McClellan—on behalf of S.O.L.R. and within the Eastern District of Missouri—emailed false and fraudulent annual management plans to Missouri DHSS. In each of the S.O.L.R. management plans that she emailed to Missouri DHSS between 2019 and 2022, Defendant McClellan represented that S.O.L.R. does not purchase any items over $5,000. Additionally, in each year's management plan, Defendant McClellan also represented that S.O.L.R. did not purchase any equipment with more than $5,000 in meal reimbursement funds. In truth and fact, however, during the fiscal years covered by those management plans, Defendant McClellan spent hundreds of thousands of S.O.L.R.'s meal reimbursement dollars to purchase items costing over $5,000.

5

16. To further convince Missouri DHSS that reimbursement dollars were spent on feeding children and not to benefit herself—Defendant McClellan's management plans also falsely represented that all of S.O.L.R.'s checks are signed by her finance director (an individual referred to herein as "Finance Director Z.S."). In truth and fact, as Defendant McClellan knew full well, Finance Director Z.S. did not sign S.O.L.R.'s checks, nor was Finance Director Z.S. even a signor on S.O.L.R.'s bank account. In furtherance of her fraud scheme, Defendant McClellan submitted the following false and fraudulent annual management plans.

### i. Defendant McClellan Submitted a Fraudulent Management Plan on or about October 30, 2020.

17. In the annual management plan submitted by Defendant McClellan on or about October 30, 2020, Defendant McClellan falsely and fraudulently represented that S.O.L.R. does not purchase any items over $5,000. In truth and fact, however, just ten days before she submitted that annual management plan, Defendant McClellan used S.O.L.R.'s meal reimbursement dollars—that she agreed to spend on feeding children—to fund a $60,000 down payment on a house for herself (located at 120 Timberwood Lane, Collinsville, Illinois, 62234). To make that down payment on her Collinsville residence, Defendant McClellan took out a $60,000 cashier's check drawn on S.O.L.R.'s bank account, which she deposited into her own personal bank account right before wiring those funds to purchase the property.

18. In that same management plan, Defendant McClellan repeated her misrepresentation that all of S.O.L.R.'s checks are signed by Finance Director Z.S. Just ten days before that representation, however, Defendant McClellan was the sole signor for the S.O.L.R. cashier's check that she used to pay the down payment on her Collinsville residence.

19. Based on Defendant McClellan's material misrepresentations in the management plan that she submitted on or about October 30, 2020, Missouri DHSS paid her more than two million dollars in meal reimbursement funds that she was not entitled to receive.

### ii. Defendant McClellan Submitted Another Fraudulent Management Plan on or about September 28, 2021.

20. In the annual management plan submitted by Defendant McClellan on or about September 28, 2021, Defendant McClellan once again falsely and fraudulently represented that S.O.L.R. does not purchase any items over $5,000. In addition, the management plan also included Defendant McClellan's misrepresentation that S.O.L.R. did not purchase any equipment during that fiscal year (October 2020–September 2021) with more than $5,000 in meal reimbursement funds. In that same management plan, Defendant McClellan also repeated her misrepresentation that all of S.O.L.R.'s checks are signed by Finance Director Z.S. In truth and fact, however, Defendant McClellan used S.O.L.R.'s state reimbursement funds to make the following purchases over $5,000 in the nine months leading up to her fraudulent management plan.

| Purchase Date | Property Purchased | Signed by Finance Director? | Purchase Price |
|---|---|---|---|
| 1/07/2021 | 2021 Chevrolet Traverse (VIN: 1GNERFKW2MJ136461) | No | $33,650.19 |
| 2/08/2021 | 2012 Chevrolet Express G3500 (VIN: 1GAZG1FA6C1196025) | No | $15,304.00 |
| 4/23/2021 | 2020 Mercedez Benz Metris Cargo Van (VIN: WD3PG3EA5L3665115) | No | $28,704.00 |
| 6/11/2021 | Residence located at 621 Rosetta, Florissant, MO, 63031 | No | $86,127.82 |
| 6/30/2021 | 2012 Ford E350 Box Truck (VIN: 1FDSE3FL3CDA08552) | No | $12,000.00 |
| 8/28/2021 | 2018 Lexus RX (VIN: 2T2BZMCA3JC145661) | No | $45,214.00 |
| | | | Total: $221,000.01 |

21. Based on Defendant McClellan's material misrepresentations in the management plan that she submitted on or about September 28, 2021, Missouri DHSS paid her hundreds of thousands of dollars in meal reimbursement funds that she was not entitled to receive.

## II. Wire Transmissions

22. On or about the dates set forth below, within the Eastern District of Missouri, for the purpose of executing the above-described scheme and artifice to defraud and obtain money and property by means of false and fraudulent pretenses, representations and promises and for the purpose of executing the same,

### CYMONE MCCLELLAN,

the defendant herein, did knowingly transmit and cause to be transmitted by means of wire communication in and affecting interstate commerce, certain writings, signs, signals, pictures, or sounds, to wit:

| Count | Date | Wire Description |
|---|---|---|
| 1 | 10/22/2020 | Defendant McClellan's wiring of $59,551.46 to Southern Illinois Real Estate Title Center for the down payment on her home |
| 2 | 10/30/2020 | Defendant McClellan's email to Missouri DHSS containing an annual management plan |
| 3 | 2/18/2021 | Defendant McClellan's $6,056.20 debit purchase with meal reimbursement dollars at Louis Vuitton from S.O.L.R.'s bank account |
| 4 | 9/28/2021 | Defendant McClellan's email to Missouri DHSS containing an annual management plan |

All in violation of Title 18, United States Code, Sections 1343 and 2.

### FORFEITURE ALLEGATION

The Grand Jury further alleges there is probable cause that:

1. Pursuant to Title 18, United States Code, Sections 982(a)(2), upon conviction of an offense in violation of Title 18, United States Code, Section 1343, as set forth in Counts One through Four, the defendant shall forfeit to the United States of America any property constituting,

8

or derived from, any proceeds obtained, directly or indirectly, as a result of such violation. Subject to forfeiture is a sum of money equal to the total value of any property, real or personal, constituting or derived from any proceeds traceable to such violation.

    2.    Specific property subject to forfeiture includes, but is not limited to, the following:

    a.    A property located at 120 Timberwood Lane, Collinsville, Illinois, 62234;
    b.    A 2021 Chevrolet Traverse (VIN: 1GNERFKW2MJ136461);
    c.    A 2012 Chevrolet Express G3500 (VIN: 1GAZG1FA6C1196025);
    d.    A 2020 Mercedez Benz Metris Cargo Van (VIN: WD3PG3EA5L3665115);
    e.    A property located at 621 Rosetta, Florissant, MO, 63031;
    f.    A 2012 Ford E350 Box Truck (VIN: 1FDSE3FL3CDA08552); and
    g.    A 2018 Lexus RX (VIN: 2T2BZMCA3JC145661).

    3.    If any of the property described above, as a result of any act or omission of the defendant:

    a.    cannot be located upon the exercise of due diligence;
    b.    has been transferred or sold to, or deposited with, a third party;
    c.    has been placed beyond the jurisdiction of the court;
    d.    has been substantially diminished in value; or
    e.    has been commingled with other property which cannot be divided without difficulty,

the United States of America will be entitled to the forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p).

A TRUE BILL.

_____
FOREPERSON

SAYLER A. FLEMING
United States Attorney

_____
DEREK J. WISEMAN, #67257MO
Assistant United States Attorney

9