UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:24-cr-00502-RWS |
| | ) |
| | ) |
| CYMONE MCCLELLAN, | ) |
| | ) |
| Defendant. | ) |

### GUILTY PLEA AGREEMENT

Come now the parties and hereby agree, as follows:

### 1. PARTIES:

The parties are Defendant Cymone McClellan, ("the Defendant"), represented by defense counsel Talmage Newton, and the United States of America (hereinafter "United States" or "Government"), represented by the Office of the United States Attorney for the Eastern District of Missouri. This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri. The Court is neither a party to nor bound by this agreement.

### 2. GUILTY PLEA:

Pursuant to Rule 11(c)(1)(A), Federal Rules of Criminal Procedure, in exchange for the Defendant's voluntary plea of guilty to Count 1 of the Superseding Indictment, the United States agrees to dismiss Counts 2 through 7 at the time of sentencing. In addition, the United States agrees that no further federal criminal prosecutions will be brought in this District relative to the

1

Defendant's wire fraud scheme charged in the Superseding Indictment, of which the Government is aware at this time.

In addition, the parties agree that the U.S. Sentencing Guidelines Total Offense Level analysis agreed to by the parties herein is the result of negotiation and led, in part, to the guilty plea. The parties further agree that, at the time of sentencing, the United States will request a sentence within the U.S. Sentencing Guidelines range (combination of Total Offense Level and Criminal History Category) ultimately determined by the Court, pursuant to any chapter of the Guidelines and Title 18, United States Code, Section 3553(a). The defendant may request any sentence authorized by law.

### 3. ELEMENTS:

As to Count 1, the defendant admits to knowingly violating Title 18, United States Code, Section 1349, and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

One, two or more persons, including Defendant, reached an agreement or came to an understanding to devise, make up, or participate in a scheme to commit wire fraud;

Two, Defendant voluntarily and intentionally joined in the agreement or understanding, either at the time it was first reached or at some later time while it was still in effect; and

Three, at the time Defendants joined in the agreement or understanding, Defendant knew the purpose of the agreement or understanding.

4. **FACTS:**

The parties agree that the facts in this case are as follows and that the Government would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to Section 1B1.3:

Beginning in or about January 2019, and continuing through at least in or about October 2024, in the Eastern District of Missouri, Defendant Cymone McClellan and Defendant Terra Davis voluntarily and intentionally conspired with each other to defraud the State of Missouri through the commission of a wire fraud scheme. The conspiracy to execute their wire fraud scheme was carried out by Defendants in the following manner:

Between in or about January 2019 and in or about June 2022, Defendant McClellan and Defendant Davis—on behalf of their nonprofit, Sister of Lavender Rose ("S.O.L.R.") and within the Eastern District of Missouri—submitted false and fraudulent meal reimbursement claims to Missouri Department of Health and Senior Services ("DHSS"). Defendants submitted their false and fraudulent meal reimbursement claims so that they could take millions of dollars from Missouri's Food and Nutrition Programs for Children that they were not entitled to receive.

In furtherance of the fraud scheme, Defendant McClellan submitted fraudulent meal reimbursement claims to Missouri DHSS for thousands of meals that S.O.L.R. never served. Through their fraudulent reimbursement claims, Defendants falsely represented that S.O.L.R. served a total of 860,876 reimbursable meals to Missouri children. In truth and fact, however, Defendant McClellan only purchased enough food and milk to serve fewer than a quarter of those meals. Based on Defendant McClellan's material misrepresentations, Missouri DHSS paid her approximately $2.3 million dollars that she was not entitled to receive.

In furtherance of her fraud scheme, Defendant McClellan also emailed false and fraudulent annual management plans to Missouri DHSS. In each of the management plans that she emailed to Missouri DHSS between 2019 and 2022, Defendant McClellan represented that S.O.L.R. does not purchase any items over $5,000. Additionally, in each year's management plan, Defendant McClellan also represented that S.O.L.R. did not purchase any equipment with more than $5,000 in meal reimbursement funds. In truth and fact, however, during the fiscal years covered by those management plans, Defendant McClellan spent hundreds of thousands of S.O.L.R.'s meal reimbursement dollars to purchase items costing over $5,000.

To further convince Missouri DHSS that reimbursement dollars were spent on feeding children—and not to benefit herself—Defendant McClellan's management plans also falsely represented that all of S.O.L.R.'s checks are signed by her finance director (an individual referred to herein as "Finance Director Z.S."). In truth and fact, as Defendant McClellan knew full well, Finance Director Z.S. did not sign S.O.L.R.'s checks, nor was Finance Director Z.S. even a signor on S.O.L.R.'s bank account. In furtherance of her fraud scheme, Defendant McClellan submitted the following false and fraudulent annual management plans.

In the annual management plan submitted by Defendant McClellan on October 30, 2020, Defendant McClellan falsely and fraudulently represented that S.O.L.R. does not purchase any items over $5,000. In truth and fact, however, just ten days before she submitted that annual management plan, Defendant McClellan used S.O.L.R.'s meal reimbursement dollars—that she agreed to spend on feeding children—to fund a $60,000 down payment on a house for herself (located at 120 Timberwood Lane, Collinsville, Illinois, 62234). To make that down payment on her Collinsville residence, Defendant McClellan took out a $60,000 cashier's check drawn on

S.O.L.R.'s bank account, which she deposited into her own personal bank account right before wiring those funds to purchase the property. In that same management plan, Defendant McClellan repeated her misrepresentation that all of S.O.L.R.'s checks are signed by Finance Director Z.S. Just ten days before that representation, however, Defendant McClellan was the sole signor for the S.O.L.R. cashier's check that she used to pay the down payment on her Collinsville residence. Based on Defendant McClellan's material misrepresentations in the management plan that she submitted on or about October 30, 2020, Missouri DHSS paid her more than two million dollars in meal reimbursement funds that she was not entitled to receive.

In the annual management plan submitted by Defendant McClellan on September 28, 2021, Defendant McClellan once again falsely and fraudulently represented that S.O.L.R. does not purchase any items over $5,000. In addition, the management plan also included Defendant McClellan's misrepresentation that S.O.L.R. did not purchase any equipment during that fiscal year (October 2020–September 2021) with more than $5,000 in meal reimbursement funds. In that same management plan, Defendant McClellan also repeated her misrepresentation that all of S.O.L.R.'s checks are signed by Finance Director Z.S. In truth and fact, however, Defendant McClellan used S.O.L.R.'s state reimbursement funds to make the following purchases over $5,000 in the nine months leading up to her fraudulent management plan.

| Purchase Date | Property Purchased | Signed by Finance Director? | Purchase Price |
|---|---|---|---|
| 1/07/2021 | 2021 Chevrolet Traverse (VIN: 1GNERFKW2MJ136461) | No | $33,650.19 |
| 2/08/2021 | 2012 Chevrolet Express G3500 (VIN: 1GAZG1FA6C1196325) | No | $15,304.00 |
| 4/23/2021 | 2020 Mercedez Benz Metris Cargo Van (VIN: WD3PG3EA5L3665115) | No | $28,704.00 |
| 6/11/2021 | Residence located at 621 Rosetta, Florissant, MO, 63031 | No | $86,127.82 |

| | | | |
|---|---|---|---|
| 6/30/2021 | 2012 Ford E350 Box Truck (VIN: 1FDSE3FL3CDA08552) | No | $12,000.00 |
| 8/28/2021 | 2018 Lexus RX (VIN: 2T2BZMCA3JC145661) | No | $45,214.00 |
| | | | **Total: $221,000.01** |

To conceal the fraud scheme, Defendant McClellan and Defendant Davis also provided and caused to be provided to Missouri DHSS fraudulent attendance sign-in sheets, which falsely represented that S.O.L.R. took the attendance of meal recipients at certain food distribution locations. In truth and fact—and despite repeated representations to the contrary—S.O.L.R. did not utilize attendance sign-in sheets at a number of their food distribution locations.

## 5. STATUTORY PENALTIES:

The defendant fully understands that the maximum possible penalty provided by law for the crime to which the defendant is pleading guilty, as to Count 1, is imprisonment of not more than 20 years, a fine of not more than $250,000, or both such imprisonment and fine. The Court may also impose a period of supervised release of not more than 3 years.

## 6. U.S. SENTENCING GUIDELINES: 2023 MANUAL:

The Defendant understands that this offense is affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category. The parties agree that the following are the applicable U.S. Sentencing Guidelines Total Offense Level provisions.

### a. Chapter 2 Offense Conduct:

**(1) Base Offense Level:** The parties agree that the base offense level for Count 1 is **7,** as found in Section 2B1.1(a).

**(2)** **Specific Offense Characteristics:** The parties agree that the following Specific Offense Characteristics apply:

The parties agree that Defendant's offense level should be increased by **16 levels** under Section 2B1.1(b)(1)(I), because the loss amount was more than $1,500,000 but less than $3,500,000.

The parties agree that Defendant's offense level should be increased by **2 levels** under Section 2B1.1(b)(9), because the offense involved a misrepresentation that the defendant was acting on behalf of a charitable organization.

The parties agree that **2 levels** should be added pursuant to Section 2B1.1(b)(12) because the offense involved conduct described in 18 U.S.C. § 1040.

**b. Chapter 3 Adjustments:**

**(1) Acceptance of Responsibility:** The parties agree that **3 levels** should be deducted pursuant to Section 3E1.1(a) and (b), because the Defendant has clearly demonstrated acceptance of responsibility and timely notified the Government of the Defendant's intention to plead guilty. The parties agree that the Defendant's eligibility for this deduction is based upon information presently known. If, subsequent to the taking of the guilty plea, the Government receives new evidence of statements or conduct by the Defendant which it believes are inconsistent with Defendant's eligibility for this deduction, the Government may present said evidence to the Court, and argue that the Defendant should not receive all or part of the deduction pursuant to Section 3E1.1, without violating the plea agreement.

**Other Adjustments:** The parties have no further agreement regarding any other adjustments.

7

    d. **Estimated Total Offense Level:** The parties estimate that the total offense level is **24**. If the presentence investigation report determines a different total offense level, the parties are permitted to object to or accept any enhancements or reductions in the presentence investigation report.

    e. **Criminal History:** The determination of the defendant's Criminal History Category shall be left to the Court. Either party may challenge, before and at sentencing, the findings of the Presentence Report as to the Defendant's criminal history and the applicable category. The Defendant's criminal history is known to the Defendant and is substantially available in the Pretrial Services Report.

    **(1)** **Adjustment for Certain Zero-Point Offenders:** If the defendant does not receive any criminal history points from Chapter 4, Part A, then the parties agree that two levels should be deducted from the total offense level under Section 4C1.1(a), because the defendant meets all of the criteria under Section 4C1.1(a)(2) through (a)(10).

    f. **Effect of Parties' U.S. Sentencing Guidelines Analysis:** The parties agree that the Court is not bound by the Guidelines analysis agreed to herein. The parties may not have foreseen all applicable Guidelines. The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement.

### 7. WAIVER OF APPEAL AND POST-CONVICTION RIGHTS:

    a. **Appeal:** The Defendant has been fully apprised by defense counsel of the Defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

**(1) Non-Sentencing Issues:** The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery, the guilty plea, the constitutionality of the statute(s) to which Defendant is pleading guilty and whether the Defendant's conduct falls within the scope of the statute(s).

**(2) Sentencing Issues:** The parties agree to waive the right to appeal all sentencing issues except those related to: (1) application of Sentencing Guideline offense-level adjustments (including those based on criminal history) not specifically set forth in the plea agreement or non-application of adjustments specifically set forth in the agreement; (2) calculation of the defendant's criminal history category; or (3) substantive reasonableness of the sentence—above the Guideline range ultimately determined by the Court for appeals taken by the defendant, or below that range for appeals taken by the Government.

**b. Habeas Corpus:** The Defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

**c. Right to Records:** The Defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

9

8. **OTHER:**

   a. **Disclosures Required by the United States Probation Office:** The Defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the government.

   b. **Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies:** Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against the Defendant.

   c. **Supervised Release:** Pursuant to any supervised release term, the Court will impose standard conditions upon the Defendant and may impose special conditions related to the crime Defendant committed. These conditions will be restrictions on the Defendant to which the Defendant will be required to adhere. Violation of the conditions of supervised release resulting in revocation may require the Defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release. The Defendant understands that parole has been abolished.

   d. **Mandatory Special Assessment:** Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a total of $100, which the Defendant agrees to pay at the time of sentencing. Money paid by the Defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

**e. Possibility of Detention:** The Defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

**f. Fines, Restitution and Costs of Incarceration and Supervision:** The Court may impose a fine, restitution (in addition to any penalty authorized by law), costs of incarceration and costs of supervision. The Defendant agrees that any fine or restitution imposed by the Court will be due and payable immediately. Pursuant to Title 18, United States Code, Section 3663A, an order of restitution is mandatory for all crimes listed in Section 3663A(c). Regardless of the count of conviction, the amount of mandatory restitution imposed shall include all amounts allowed by Section 3663A(b) and the amount of loss agreed to by the parties, including all relevant conduct loss. The Defendant agrees to provide full restitution to all victims of all charges in the Indictment.

g. **Forfeiture:** The defendant agrees to the forfeiture set forth in the Forfeiture Allegation in the Superseding Indictment to which the Defendant is pleading guilty. This agreement includes any items that were seized by law enforcement officials during the course of this investigation, along with the following items:

   a.  A property located at 120 Timberwood Lane, Collinsville, Illinois, 62234;
   b.  A 2021 Chevrolet Traverse (VIN: 1GNERFKW2MJ136461);
   c.  A 2012 Chevrolet Express G3500 (VIN: 1GAZG1FA6C1196025);
   d.  A 2020 Mercedez Benz Metris Cargo Van (VIN: WD3PG3EA5L3665115);
   e.  A property located at 621 Rosetta, Florissant, MO, 63031;
   f.  A 2012 Ford E350 Box Truck (VIN: 1FDSE3FL3CDA08552); and
   g.  A 2018 Lexus RX (VIN: 2T2BZMCA3JC145661).

The Defendant also agrees to the entry of a forfeiture money judgment in the amount of restitution determined by the court at sentencing. The Defendant further agrees that the proffer of evidence supporting this guilty plea is sufficient evidence to support such forfeiture.

The Defendant agrees that the Court may enter a consent preliminary order of forfeiture at the time of his guilty plea or at any time before sentencing. The Defendant further agrees that this order will become final as to the Defendant when it is issued and will be part of his sentence pursuant to Fed. R. Crim. P. 32.2(b)(4)(A).

The Defendant agrees that the Government may choose in its sole discretion how it wishes to accomplish forfeiture, whether by criminal or civil forfeiture, using judicial or non-judicial forfeiture processes. The Defendant waives all rights to assert any interest in the forfeited property in the future, and will withdraw any prior claims made to forfeited property, whether they were made in a judicial or non-judicial forfeiture process.

The Defendant agrees (i) to assist the Government in identifying all property that is subject to forfeiture, (ii) to take any and all actions necessary to transfer title and ownership of said property to the Government, and (iii) to help the Government to rebut the claims of nominees and/or alleged third party owners, including by testifying truthfully in any judicial forfeiture proceeding.

The Defendant knowingly and intelligently waives all constitutional and statutory challenges in any manner to any forfeiture carried out in accordance with this plea agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment. The Defendant further knowingly and intelligently waives any rights the Defendant may have (i) for notice of the forfeiture to be given in the charging instrument, (ii) for a jury or the Court to determine what property is subject to forfeiture, (iii) for the Court to explain the forfeiture at the Defendant's change of plea hearing, and (iv) for the forfeiture to be made part of the oral pronouncement of sentence and included in the judgment.

## 9. ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS:

In pleading guilty, the Defendant acknowledges, fully understands and hereby waives his rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the government to prove the elements of the offenses against the Defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence and the right to compel the attendance of witnesses. The Defendant further understands that by this guilty plea, the Defendant expressly waives all the rights set forth in this paragraph.

The Defendant fully understands that the Defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. The Defendant's counsel has explained these rights and the consequences of the waiver of these rights. The Defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

The Defendant is fully satisfied with the representation received from defense counsel. The Defendant has reviewed the Government's evidence and discussed the Government's case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which the Defendant has requested relative to the Government's case and any defenses.

The guilty plea could impact Defendant's immigration status or result in deportation. In particular, if any crime to which Defendant is pleading guilty is an "aggravated felony" as defined by Title 8, United States Code, Section 1101(a)(43), removal or deportation is presumed mandatory. Defense counsel has advised the Defendant of the possible immigration consequences, including deportation, resulting from the plea.

## 10. VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT:

This document constitutes the entire agreement between the Defendant and the Government, and no other promises or inducements have been made, directly or indirectly, by any agent of the Government, including any Department of Justice attorney, concerning any plea to be entered in this case. In addition, the Defendant states that no person has, directly or indirectly, threatened or coerced the Defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

The Defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. The Defendant further acknowledges that this guilty plea is made of the Defendant's own free will and that the Defendant is, in fact, guilty.

## 11. CONSEQUENCES OF POST-PLEA MISCONDUCT:

After pleading guilty and before sentencing, if the Defendant commits any crime, other than minor traffic offenses, violates any condition of release that results in revocation, violates any term of this guilty plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office or fails to appear for sentencing, the United States, at its option, may be released from its obligations under this agreement. The Government may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported

14

by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

12. **NO RIGHT TO WITHDRAW GUILTY PLEA:**

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, the Defendant understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement which deal with charges the Government agrees to dismiss or not to bring.

5-27-25
Date

Derek Wiseman
Assistant United States Attorney

5-27-25
Date

Cymone McClellan
Defendant

5/27/2025
Date

Talmage Newton
Attorney for Defendant

15